UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JEFFREY BETHUNE,<br><br>                Plaintiffs,<br>    v.<br><br>CITY OF WASHOUGAL; A POLITICAL SUBDIVISION OF THE STATE OF WASHINGTON, OFFICER FRANCIS REAGAN INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS POLICE OFFICER FOR CITY OF WASHOUGAL,<br><br>                Defendants. | CASE NO. 3:21-cv-05647-DGE<br><br>ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS (DKT. NO. 16) |

## I    INTRODUCTION

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. No. 16). Having examined the briefing and the record, the Court GRANTS summary judgment to Defendants on Plaintiff's federal law claims and exercises its discretion to DISMISS Plaintiff's state law claims for the reasons articulated herein.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS (DKT. NO. 16) - 1

## II     BACKGROUND

This matter arises out of an alleged civil dispute between Plaintiff Jeffrey Bethune's daughter Jordan and her ex-boyfriend Jacob Treacy. Certain facts are uncontested. Both parties acknowledge that Plaintiff took possession of multiple firearms of disputed provenance. (*See* Dkt. Nos. 16 at 2; 23 at 2.) Mr. Treacy contacted the police to obtain possession of these firearms. (*Id.*) Officer Reagan was the officer responsible for investigating Mr. Treacy's claims. (*Id.*) And Officer Reagan ultimately arrested Mr. Bethune for theft of firearms on October 20, 2019. (*See* Dkt. Nos. 16 at 2; 23 at 4.) Mr. Bethune was charged with three counts of theft of a firearm. (*See* Dkt. No. 17 at 17.) The prosecutor subsequently dropped the charges against Plaintiff.

On August 19, 2021, Plaintiff filed suit against the City of Washougal, Chief of Police Wendi Steinbronn both individually and in her official capacity, and Officer Francis Reagan both individually and his official capacity. (Dkt. No. 1-1 at 1). Plaintiff alleged numerous civil rights violations pursuant to 42 U.S.C. § 1983 as well as state law claims for negligence and defamation and sought declaratory relief and monetary damages for his purported injuries. (*See generally* Dkt. No. 1-1.) The Defendants removed this action to federal court on September 3, 2021. (Dkt. No. 1.) On January 18, 2022, the parties stipulated to, and the Court approved, the dismissal of the claims against Chief Steinbronn. (*See* Dkt. No. 13.) On July 7, 2022, the remaining Defendants moved for summary judgment, arguing that there were no genuine disputes of material fact as to any of Plaintiff's claims and that they were entitled to judgment as a matter of law. (Dkt. No. 16 at 1.) Plaintiff moved for an extension of time to respond to Defendant's motion (Dkt. No. 18), which Defendants opposed (Dkt. No. 20). The Court granted

Plaintiff's motion for an extension (Dkt. No. 22) and Plaintiff filed his opposition to Defendants' motion on August 15, 2022 (Dkt. No. 23). Plaintiff filed a timely reply. (Dkt. No. 24.)

### III     DISCUSSION

**A.     Legal Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The deciding court must view the evidence, including all reasonable inferences, in favor of the non-moving party." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Additionally, the moving party may meet their summary judgment burden by establishing through argument that the non-movant has failed to offer any evidence in support of their claims. *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1263 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016); *see also Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000); Fed. R. Civ. P. 56(e)(3).

**B.     Substantive Due Process Claims**

The Court finds that Plaintiff has failed to offer any evidence that he was deprived of substantive due process after his arrest and as such grants Defendants' motion for summary judgment on Plaintiff's due process claims.

Plaintiff fails to articulate in his complaint precisely how the Defendants denied him due process of law, but the Court construes his claim as alleging that the circumstances of his arrest violated his substantive due process rights under the Fourteenth Amendment. To prevail on a

claim that Plaintiff's substantive due process rights were violated, he must show that "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). However, claims alleging substantive due process violations before or during an arrest must be analyzed under the Fourth, not Fourteenth, Amendment. *See Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001). Plaintiff presents no evidence of other facts that would give rise to a substantive due process violation outside of the context of his arrest. As such, the Court grants summary judgment to the Defendants as to Plaintiffs' substantive due process claims.

**C.     Equal Protection Clause Claims**

The Court similarly grants summary judgment to Defendants on Plaintiff's Equal Protection Clause claims.

"To succeed on a § 1983 equal protection claim, the plaintiff[ ] must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." *Appling v. City of Los Angeles*, 701 F. App'x 622, 626 (9th Cir. 2017) (*quoting Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000)) (alteration in original). Plaintiff has offered no evidence indicating that he is a member of a protected class or that the Defendants intentionally discriminated against him based on his membership in that class. There is no evidence in the record supporting an allegation that the Defendants possessed an "impermissible motive." *Jefferson Sch. Dist. No. 14J*, 208 F.3d at 740. "[C]onclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). As such, the Court grants Defendants' motion for summary judgment as to Plaintiff's equal protection clause claims.

**D.     Municipal Liability**

Plaintiff has also failed to provide any evidence to support his claims for municipal liability against the City of Washougal.

Defendants correctly note that a municipality may not be held liable pursuant to 42 U.S.C. § 1983 on a theory of respondeat superior. (*See* Dkt. No. 16 at 4); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ( "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). A claim for municipal liability will only lie where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. To establish that a municipality had a "policy or custom" pursuant to *Monell*, a plaintiff must offer evidence that 1) the municipality acted according to an "'expressly adopted official policy,'" 2) the entity maintained a longstanding practice or custom that gave rise to plaintiff's injury, or 3) that an official with final policy-making authority ratified the allegedly unconstitutional actions. *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021). Plaintiff has failed to offer any such evidence and his *Monell* claims rest on mere conclusory allegations.

        a. <u>Express Official Policy</u>

First, Plaintiff has put forward no evidence that the municipality had an expressly adopted official policy that was unconstitutional.

        b. <u>Ratification</u>

Second, Plaintiff offers no evidence that an official with final policy-making authority ratified his allegedly unconstitutional arrest. Plaintiff appears to argue that the fact that the City of Washougal, through Chief of Police Steinbronn, failed to train or discipline Officer Reagan after the dismissal of Plaintiff's arrest is sufficient to ratify his allegedly unconstitutional actions.

(Dkt. No. 23 at 8.)  Plaintiff cites to *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) to support this proposition, but *Pembaur* is clearly distinguishable based on the facts.  In *Pembaur*, a local county prosecutor in Ohio affirmatively ordered local sheriffs to arrest witnesses who failed to respond to grand jury subpoenas and the prosecutor subsequently charged the petitioner with obstructing the execution of the arrest warrants.  *Pembaur*, 475 U.S. at 472–73.  Chief Steinbronn, by contrast, is alleged to have ratified Officer Reagan's actions by failing to discipline him.  Additionally, lower state appellate courts in *Pembaur* had determined that county prosecutors in Ohio could, depending on the circumstances, establish county policy in certain circumstances.  *Id.* at 484.

"Whether a particular official has final policy-making authority is a question of state law."  *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).  "[T]he identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).  Final policy making authority may either be "granted directly by a legislative enactment or may be delegated by an official who possesses such authority."  *Pembaur*, 475 U.S. at 483.  "[U]nconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under section 1983."  *Gillette*, 979 F.2d at 1347.  Plaintiff must demonstrate that "a policymaker approve[d] a subordinate's decision *and the basis for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision."  *Gillette*, 979 F.2d at 1348 (emphasis in original).

Here, Plaintiff offers no evidence to support a finding that Chief Steinbronn is invested with final policy-making authority or that the Chief of Police approved Officer Reagan's decisions and the basis for it.

1          Plaintiff does not provide evidence indicating that the Chief of Police in the City of
2   Washougal has final policymaking authority.  The City of Washougal is a non-charter code city.
3   *See* WMC 1.16.010.  Under state law, the city council has the power to "power to organize and
4   regulate its internal affairs . . . and to define the functions, powers, and duties of its officers and
5   employees." Wash. Rev. Code § 35A.11.020.  The City of Washougal's municipal code also
6   provides that the Chief of Police is "subject to the direction of the city manager."  WMC
7   2.64.010.  The City Manager ultimately has "general supervision over the administrative affairs
8   of the city . . . [And the power to] appoint and remove, at any time, all department heads, officers
9   and employees of the city." WMC 2.05.030.  The code vests the Chief of Police with the "power
10  to act as granted by the state for noncharter, incorporated cities." WMC 2.64.040.  Given the
11  supervisory powers of the city council and city manager, we find that the Chief of Police does
12  not have final policymaking authority on behalf of the city.  *See Bondurant v. City of*
13  *Battleground*, No. 3:15-CV-05719-KLS, 2016 WL 6973267, at *7 (W.D. Wash. Nov. 28, 2016)
14  (finding that the Chief of Police in a non-charter code city did not have final policymaking
15  authority to ratify the allegedly unconstitutional conduct of their officers), *aff'd sub nom.*
16  *Bondurant v. City of Battle Ground*, 698 F. App'x 361 (9th Cir. 2017).
17         Even were the Court to find that the Chief of Police had such authority, Plaintiff has
18  asserted no material facts that establish that Chief Steinbronn affirmatively approved Officer
19  Reagan's arrest of Plaintiff and the basis for it.  At most, Plaintiff has offered evidence that
20  Officer Reagan was subject to an internal investigation by a patrol sergeant and that the
21  investigation found no evidence of wrongdoing.  (*See* Dkt. 23-1 at 24–25.)  Contrary to
22  Plaintiff's assertions, Officer Reagan's deposition testimony clearly indicates that Officer
23  Reagan did not regularly work with the patrol sergeant and the patrol sergeant was not a member
24

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS (DKT. NO. 16) - 7

1  of the response team that Officer Reagan was on.[1]  Failure to discipline an officer does not

2  establish that Chief Steinbronn affirmatively approved Officer Reagan's decision to arrest Mr.

3  Bethune and the basis for it.

4      Defendants have adequately shown the absence of evidence in support of Plaintiff's

5  ratification claims and Plaintiff has not rebutted this burden through affidavit or other evidence.

6  *Fairbank*, 212 F.3d at 532.

7      c.  <u>Long-Standing Practice or Custom</u>

8      Third, Plaintiff fails to offer material evidence to establish that the City had a long-

9  standing practice or custom that gave rise to their injuries.

10      Long-standing practices or customs may be adduced when a municipality "fails to train

11  its employees adequately."  *Gordon*, 6 F.4th at 973.  Plaintiffs seeking to establish that a

12  municipality should be held liable for failure to train "'must demonstrate a conscious or

13  deliberate choice on the part of a municipality in order to prevail on a failure to train claim.'"

14  *Flores v. Cnty. of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *Price v. Sery*, 513

15  F.3d 962, 973 (9th Cir. 2008)) (internal quotation marks omitted).  Plaintiffs must also establish

16  "deliberate indifference" to prevail on a failure to supervise claim.  *Dougherty v. City of Covina*,

17  654 F.3d 892, 900 (9th Cir. 2011).  Negligence is not sufficient to establish failure to train or to

18  supervise.  *Id.*

19      Plaintiff makes several arguments as to why the City was deliberately indifferent, but

20  each is unconvincing.  Plaintiff argues 1) that the City's "inefficient implementation of

---

[1] The brief asserts that "[t]he police Department chose [Officer Reagan's] supervisor to conduct the internal investigation against Officer Reagan, who not surprisingly found he had done nothing wrong." (Dkt. No. 23 at 8.)  As noted, this is unsupported by the actual deposition testimony presented to the Court.  In the future, Plaintiff's counsel should be careful to review the factual assertions levied in their brief for error.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS (DKT. NO. 16) - 8

administrative policies" to discipline Officer Reagan for prior complaints of misconduct evinces a policy of deliberate indifference, 2) that the City was on notice that their failure to train or supervise was leading to the violation of constitutional rights, and 3) that the City's failure to properly investigate and discipline Officer Reagan after the arrest of Mr. Bethune is sufficient in itself to establish that the City was deliberately indifferent to Officer Reagan's allegedly unconstitutional actions. (Dkt. No. 7–8.) However, once again Plaintiff offers no substantive evidence to support these claims.

Plaintiff points to Officer Reagan's deposition testimony to assert that the city failed to properly investigate him, but the testimony merely establishes that Officer Reagan had been investigated for complaints, not that he was found guilty of or investigated for prior constitutional violations. (*See* Dkt. No. 23-1 at 24); (*see also* Dkt No. 25-1 at 2.)  Plaintiff offers no evidence as to whether these prior investigations were based on alleged constitutional violations. *Cf. Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1234 (9th Cir. 2011) (noting that deliberate indifference could be determined where evidence shows officers repeatedly committed constitutional violations but were not disciplined or reprimanded).

Evidence that Officer Reagan was previously investigated, absent more, is also not sufficient to establish that the city was on actual or constructive notice that it failed to adequately train or supervise its officers.  Plaintiff offers no evidence to establish that other officers had violated citizens' constitutional rights by intervening in landlord-tenant disputes. *See Gordon*, 6 F.4th at 974 ("[A] single incident of unconstitutional activity is [typically] not sufficient to impose liability under Monell.").  Plaintiff's current lawsuit alleging that Officer Reagan violated his constitutional rights is not sufficient to put the City on notice.  Plaintiff cites to no authority, nor is the Court aware of any such authority, that would establish actual or constructive notice

based on the instant litigation. Nor is the City's failure to discipline Officer Reagan sufficient to establish deliberate indifference. As previously discussed, Plaintiff's evidence only shows that Officer Reagan was investigated by an officer with whom he had little working relationship and that the investigation found no evidence of wrongdoing. (Dkt. 23-1 at 24–25.)

In sum, Defendants have convincingly shown that Plaintiff has offered no relevant evidence establishing *Monell* liability for the City of Washougal for any of Plaintiff's constitutional claims. Plaintiff fails to rebut this showing, and as such the Court GRANTS summary judgment in favor of the Defendants as to all of Plaintiff's *Monell* claims.

**E.     Fourth Amendment Claims[2]**

Plaintiff asserts that Officer Reagan unconstitutionally searched and seized, falsely arrested, and unlawfully imprisoned him, in violation of his constitutionally protected rights. (*See* Dkt. No. 1-1 at 5.) As discussed above, the constitutionality of Plaintiff's arrest must be analyzed under the Fourth Amendment. *See Fontana*, 262 F.3d at 881. Arrests are seizures under the Fourth Amendment "and must be supported by probable cause." *Morgan v. Woessner*,

---

[2] Plaintiff's complaint alleges violations of his right to be free from false arrest and false imprisonment pursuant to 42 U.S.C. § 1983. (*See* Dkt. No. 1-1 at 4–5.) The Court construes these claims as being brought pursuant to Plaintiff's rights under the Fourth Amendment rather than pursuant to Washington state law as § 1983 only provides a cause of action for violations of the U.S. Constitution or federal law. *See Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991) ("To state a section 1983 claim, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law."). Plaintiff cites to Washington state legal standards for false arrest and imprisonment in their briefing but does not assert that these claims are brought pursuant to state law. (*See* Dkt. No. 23 at 12.) To the extent that these claims are brought pursuant to state law, we would dismiss them as we find that we no longer have jurisdiction over the underlying action. *See Kandi v. Mgmt. & Training Corp.*, 778 F. App'x 462, 463 (9th Cir. 2019) ("[A] federal court may decline supplemental jurisdiction over related state law claims once it has dismissed all claims over which it has original jurisdiction.").

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS (DKT. NO. 16) - 10

997 F.2d 1244, 1252 (9th Cir. 1993); *see also Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011).

Defendants argue that Officer Reagan is entitled to qualified immunity related to Plaintiff's arrest. (Dkt. No. 16 at 6.) To assess whether an official is entitled to qualified immunity, a court must determine "(1) whether the facts alleged show that the officer violated a constitutional right; and (2) if so, whether that right was clearly established at the time of the event." *Rosenbaum*, 663 F.3d at 1075. These factors may be assessed in either order. *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Whether an officer violated a constitutional right is a question of fact, while the determination as to whether the right was "clearly established" is a question of law. *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). Where a party claims that they were subject to an unlawful arrest or detention, the qualified immunity analysis focuses on "(1) whether there was probable cause for the arrest; and (2) whether it is reasonably arguable that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum*, 663 F.3d at 1076.

Officer Reagan is entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed to arrest" Mr. Bethune. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Probable cause exists where "officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) This is an objective inquiry. *Id.* Additionally, officers "may not disregard facts tending to dissipate probable cause." *Sialoi v. City of San Diego*, 823 F.3d 1223, 1232 (9th Cir. 2016) (quoting *Lopez*, 482 F.3d at 1073).

The Court finds that a reasonable officer could disagree as to the legality of Plaintiff's arrest and as such find that Officer Reagan is entitled to qualified immunity.[3] Defendants argue that Plaintiff told Officer Reagan that he refused to return the guns and that he was aware that these guns were claimed by his daughter's ex-boyfriend. (*See* Dkt. No. 24 at 7.) They also argue that Plaintiff had no right himself to hold the ex-boyfriend's guns. (*Id.*) This, they argue, is sufficient to establish that Officer Reagan could reasonably believe that an offense had been committed since the law under which Plaintiff was charged, theft of a firearm, defines theft as "wrongfully obtain[ing] or exert[ing] unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." Wash. Rev. Code § 9A.56.020. Plaintiff, by contrast, asserts that it was objectively unreasonable for Officer Reagan to rely on Mr. Treacy's testimony that the guns belonged to him and to ignore contrary evidence that there was a dispute over the nature of the ownership of the property. (Dkt. No. 23 at 11.)

The record contains conflicting assertions as to what Plaintiff informed Officer Reagan about the guns in his possession and what evidence he relied on in making his arrest. In Plaintiff's deposition testimony, Plaintiff asserts that he told Officer Reagan that the guns were not stolen, that his daughter and her ex-boyfriend "bought a lot of their properties, all their stuff together. I don't know who's what. I just told him they're safe, they're secure." (*See* Dkt. No. 17 at 10.) Plaintiff also asserts that he informed Officer Reagan that there was a civil dispute over the rightful possession of those guns. (*See, e.g.*, Dkt. No. 23-1 at 15.) It is clearly established that a civil dispute cannot give rise to probable cause for a criminal arrest. *See, e.g.*,

---

[3] Because reasonable officers could disagree as to whether there was probable cause in this instance, the Court need not reach the issue of whether Officer Reagan had probable cause to arrest Mr. Bethune.

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS (DKT. NO. 16) - 12

*Stevens v. Rose*, 298 F.3d 880, 883 (9th Cir. 2002).  It is undisputed that Officer Reagan was informed, in some capacity, that the guns at issue were subject to a civil dispute between Plaintiff's daughter and his daughter's ex-boyfriend.  Officer Reagan's police report acknowledges such.  (See Dkt. No. 23-1 at 39–40).  What is disputed is the extent to which Officer Reagan was aware of the nature of the civil dispute between Plaintiff's daughter and his daughter's ex-boyfriend.

However, even if the Court assumes that Officer Reagan was aware that there was a civil dispute over property ownership, taking the facts as presented in Plaintiff's favor, reasonable officers could still disagree as to whether Officer Reagan had probable cause to arrest Plaintiff. The parties agree or the facts unambiguously indicate that: 1) Plaintiff refused to return the guns at issue (*see* Dkt. Nos. 16 at 9; 23 at 11); 2) Plaintiff was aware that there was a dispute over ownership of the guns (*see, e.g.*, Dkt. No. 23-1 at 7); 3) Plaintiff did not own or have any legal claim to the guns; and 4) Plaintiff was not a party to the civil dispute, (*see* Dkt. No. 17 at 11) (noting that the attorney who advised Plaintiff to retain the firearms was his daughter's not his). These facts, in themselves, would appear to meet the elements required to charge a party under Washington Revised Code § 9A.56.300.

Furthermore, the statute itself is ambiguous as to certain third-party conduct.  Washington Revised Code § 9A.56.300 prohibits the "theft of a firearm" and provides that the definition of theft in Washington Revised Code § 9A.56.020, and specified defenses in that statute, shall be applicable to the statute. As discussed, Washington Revised Code § 9A.56.020 defines theft as wrongfully obtaining or exerting unauthorized controlling over the property of another with the intent to deprive the other person of the property.  Wash. Rev. Code § 9A.56.020.  Washington

Revised Code § 9A.56.010 further defines the terms "wrongfully obtain or exert unauthorized control" as follows:

> (a) To take the property or services of another;
> (b) Having any property or services in one's possession, custody or control as bailee, factor, lessee, pledgee, renter, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto; or
> (c) Having any property or services in one's possession, custody, or control as partner, to secrete, withhold, or appropriate the same to his or her use or to the use of any person other than the true owner or person entitled thereto, where the use is unauthorized by the partnership agreement.

Wash. Rev. Code § 9A.56.010. Washington courts have similarly interpreted Washington Revised Code § 9A.56.020 as requiring either a "trespass in the taking" or "a violation of trust." *See State v. Greathouse*, 56 P.3d 569, 583 n.3 (Wash. Ct. App. 2002). These definitions do not clarify whether a person may lawfully possess and refuse to return property of another that they themselves have no claim to where ownership of the property is in dispute. The clear terms of the statute, as Defendants have argued, would appear to apply to Mr. Bethune at the time of his arrest and Officer Reagan was under no duty to investigate Mr. Bethune's potential defenses. *See Diop v. City of New York*, 50 F. Supp. 3d 411, 419 (S.D.N.Y. 2014) ("An arresting officer thus does not have a 'duty . . . to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest.'").

Given the statutory ambiguity, reasonable officers could have disagreed as to whether Officer Reagan had probable cause and the Court finds that Officer Reagan is entitled to qualified immunity for Mr. Bethune's arrest. The Court grants summary judgment for the

Defendants as to Plaintiff's claims Fourth Amendment claim for unlawful search and seizure, false arrest, and unlawful imprisonment.

**F.     Malicious Abuse of Process**

Plaintiff has failed to provide evidence indicating that a material issue of fact exists as to his malicious abuse of process claim.

To prevail on his malicious abuse of process claim, Plaintiff must establish both the state law elements of malicious prosecution and that the party being charged with malicious prosecution "'did so for the purpose of denying [him] equal protection or another specific constitutional right.'" *See Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)). "Malicious prosecution has five elements under Washington law: 1) the defendant began or continued a prosecution; 2) without probable cause; 3) with malice; 4) in a proceeding terminated in the plaintiff's favor; 5) to plaintiff's injury." *Lassiter*, 556 F.3d at 1054 (9th Cir. 2009). "A police officer who maliciously or recklessly makes false reports to the prosecutor may be held liable for damages incurred as a proximate result of those reports." *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007); *see also Hill v. Wallin*, No. C 15-5663 KLS, 2016 WL 7387093, at *4 (W.D. Wash. Dec. 21, 2016).

Plaintiff has failed to establish all the elements required to prevail on a claim of malicious abuse of process. Plaintiff's brief is rife with unsupported assertions that cannot be credited on summary judgment. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Unsworn allegations in a party's briefing are not admissible evidence for purposes of summary judgment. "A party asserting that a fact cannot be or is genuinely disputed **must support the**

**assertion by . . . citing to particular parts of materials in the record**, including depositions, documents, electronically stored information, affidavits or declarations.  Fed. R. Civ. P. 56(c) (emphasis added).  For example, Plaintiff asserts that "[o]nce the prosecutor's office learned that there was civil litigation pending involving the parties, it dismissed all charges."  (Dkt. No. 23 at 13.)  But Plaintiff does not cite to anything in the record to support this claim.[4]  Defendants, by contrast, have put forward creditable evidence indicating that the prosecutor would reinstate the charges as against Plaintiff if Plaintiff reinvolved himself in the civil dispute between his daughter and Mr. Treacy.  (*See* Dkt. No. 25 at 7.)  Similarly, Plaintiff argues that Officer Reagan was "reckless in his complete disregard of the facts" and "deliberately" left material out of his police report to mislead prosecutors.  (*See* Dkt. No. 23 at 14.)  Plaintiff does not cite to the record to support this argument, nor do other record citations in his brief support this claim, and instead argues that his case is similar to *Lanuza v. Love*, 134 F. Supp. 3d 1290, 1294 (W.D. Wash. 2015).  However, the district court in *Lanuza* credited Plaintiff's unsupported assertions of malice because the defendant had moved for judgment on the pleadings and in such a context a court must accept factual allegations in the complaint as true, *see* 134 F. Supp. 3d at 1293.

At summary judgment a court may not accept unsupported allegations in a party's briefing as valid evidence.  Plaintiff's failure to cite to the record is ultimately fatal to their malicious prosecution claim.  *See Offley v. Activision, Inc.*, 273 F. App'x 610, 611 (9th Cir. 2008) ("Having failed to cite to the record, plaintiffs have not pointed to any factual dispute that requires trial and precludes summary judgment."); *see also Oracle Am., Inc. v. Hewlett Packard*

---

[4] Note that while Plaintiff's counsel's declaration (Dkt. No. 23-1 at 1) purports to offer as Exhibit C a "true and correct copy of the dismissal order of the criminal information filed against the Plaintiff," Exhibit C in fact appears to be a dismissal of a related civil case filed by Plaintiff as against Jacob Treacy.  (*See id.* at 35.)

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS (DKT. NO. 16) - 16

**assertion by . . . citing to particular parts of materials in the record**, including depositions, documents, electronically stored information, affidavits or declarations.  Fed. R. Civ. P. 56(c) (emphasis added).  For example, Plaintiff asserts that "[o]nce the prosecutor's office learned that there was civil litigation pending involving the parties, it dismissed all charges."  (Dkt. No. 23 at 13.)  But Plaintiff does not cite to anything in the record to support this claim.[4]  Defendants, by contrast, have put forward creditable evidence indicating that the prosecutor would reinstate the charges as against Plaintiff if Plaintiff reinvolved himself in the civil dispute between his daughter and Mr. Treacy.  (*See* Dkt. No. 25 at 7.)  Similarly, Plaintiff argues that Officer Reagan was "reckless in his complete disregard of the facts" and "deliberately" left material out of his police report to mislead prosecutors.  (*See* Dkt. No. 23 at 14.)  Plaintiff does not cite to the record to support this argument, nor do other record citations in his brief support this claim, and instead argues that his case is similar to *Lanuza v. Love*, 134 F. Supp. 3d 1290, 1294 (W.D. Wash. 2015).  However, the district court in *Lanuza* credited Plaintiff's unsupported assertions of malice because the defendant had moved for judgment on the pleadings and in such a context a court must accept factual allegations in the complaint as true, *see* 134 F. Supp. 3d at 1293.

At summary judgment a court may not accept unsupported allegations in a party's briefing as valid evidence.  Plaintiff's failure to cite to the record is ultimately fatal to their malicious prosecution claim.  *See Offley v. Activision, Inc.*, 273 F. App'x 610, 611 (9th Cir. 2008) ("Having failed to cite to the record, plaintiffs have not pointed to any factual dispute that requires trial and precludes summary judgment."); *see also Oracle Am., Inc. v. Hewlett Packard*

---

[4] Note that while Plaintiff's counsel's declaration (Dkt. No. 23-1 at 1) purports to offer as Exhibit C a "true and correct copy of the dismissal order of the criminal information filed against the Plaintiff," Exhibit C in fact appears to be a dismissal of a related civil case filed by Plaintiff as against Jacob Treacy.  (*See id.* at 35.)

ORDER GRANTING PARTIAL SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS (DKT. NO. 16) - 16

*Enter. Co.*, 971 F.3d 1042, 1049 (9th Cir. 2020) (affirming summary judgment where a party failed to cite evidence or authority to support is suppositions); *Angel v. Seattle-First Nat. Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) (affirming summary judgment because a party failed to cite to evidence in the record and instead relied on conclusory allegations).  The Court therefore finds that Defendant is entitled to summary judgment on Plaintiff's malicious abuse of process claim.

**G.     State Law Claims**

Given that there are no other federal claims remaining, the Court declines to exercise jurisdiction over Plaintiff's supplemental state law claims.  *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'"); *see also* 28 U.S.C. § 1367(c)(3).

## IV     CONCLUSION

Accordingly, and having considered Defendants' motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendants' motion for summary judgment as to Plaintiff's federal claims is GRANTED and such claims are DISMISSED with prejudice.  The Court also declines to exercise jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3) and as such these claims are DISMISSED without prejudice.

Dated this 22nd day of November, 2022.



David G. Estudillo
United States District Judge